IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JOSEPH PERRONE,**

**Petitioner,**

              Civil Case No. 14-cv-281-DRH
**v.**              Criminal Case No. 09-cr-30016-DRH

**UNITED STATES OF AMERICA,**

**Respondent.**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction

This matter is before the Court on petitioner Joseph Perrone's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Doc. 1). Specifically, Perrone attacks the validity of his sentence and asks this Court to resentence him based on new case precedent that he believes narrows the scope of the crimes of which he was convicted. The government filed its response in opposition of Perrone's § 2255 petition (Doc. 9). After reviewing Perrone's motion, along with the government's response and exhibits, the Court appointed counsel to represent Perrone pursuant to 18 U.S.C. § 3006A(a)(2)(B). Thereafter, Perrone filed an amended § 2255 petition (Doc. 27). For the following reasons, petitioner's motion to vacate, set aside, or

correct sentence pursuant to 28 U.S.C. § 2255 and motion for hearing (Doc. 50) are denied[1].

## II. Background

Petitioner Joseph Perrone pled guilty, pursuant to a plea agreement, on September 25, 2009 to a one-count indictment charging him with distribution of a controlled substance pursuant to 21 U.S.C. § 841(a)(1) (*United States v. Perrone*, 09-cr-30016-DRH[2], (Doc. 45)). He received the "death resulting from drug distribution" enhancement and at the sentencing hearing on January 15, 2010, the Court sentenced Perrone to 240 months' imprisonment (Cr. Doc. 59). Perrone was represented by CJA appointed counsel David M. Williams leading up to and during his change of plea. Thereafter, Frederick J. Hess was appointed as CJA counsel to represent Perrone at his sentencing. Perrone did not attempt to appeal his conviction and sentence.

On February 24, 2014, Perrone filed a collateral attack on his sentence pursuant to 28 U.S.C. § 2255, in which he raises two arguments: (1) actual innocence in light of the Supreme Court new rule and statutory interpretation in *Burrage v. United States*, 134 S.Ct. 881 (2014) for causation, which renders

---

[1] Having examined the record, the Court concludes Perrone's claims do not warrant an evidentiary hearing. See *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (held that a hearing not required where the record conclusively demonstrates that defendant is not entitled to relief on § 2255 motion); *Cooper v. United States*, 378 F.3d 638, 641; see also Rules 4(b) and 8(a) of Rules Governing Section 2255 Proceedings).

[2] Further reference to Perrone's criminal docket in this order will include "Cr. Doc." prior to the document number to differential from his civil habeas case filings.

him innocent of the charged indictment and (2) an ineffective assistance of counsel claim based on his attorney's failure to object under the *U.S. v. Hatfield*, 591 F.3d 845 (7th Cir. 2010) decision. Following the government's response, the Court appointed CJA representation for Perrone pursuant to 18 U.S.C. § 3006A(a)(2)(B), and LaToya Berry entered her appearance. Perrone argued that he did not want appointed counsel and did not want counsel to modify his claims in any way (Doc. 18). Thereafter, Ms. Berry filed a reply to the government's response to petitioner's §2255, serving as an amended §2255 petition (Doc. 27). On October 14, 2014, Perrone filed a pro se motion for the withdrawal of his court appointed counsel, alleging communication issues between them (Doc. 30). At that time, the Court appointed John Clemmons to represent petitioner and ordered Ms. Berry to turn over her files to Mr. Clemmons (Doc. 31).

Perrone again filed a motion for the withdrawal of his counsel in September 2015 (Doc. 35). At that time, the Court appointed Chris Threlkeld to represent petitioner (Doc.39). Once again, Perrone moved for appointment of new counsel (Doc. 44) and the Court set the matter for hearing (Doc. 45). Prior to the hearing, Perrone sought to withdraw his motion to appoint new counsel (Doc.48) following conversations with Threlkeld. Perrone indicated that he was satisfied with moving forward with Mr. Threlkeld as his current counsel. Accordingly, the hearing was cancelled. Additionally, Perrone filed a separate

motion requesting a hearing on his ineffective assistance of counsel claim, and whether *Burrage* rendered him innocent (Doc. 50).

### III.  Law

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court to essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Thus, relief under Section 2255 is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)), and "is available when a 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum allowed by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008)(quoting 28 U.S.C. § 2255).

Unless a movant demonstrates changed circumstances in fact or law, he may not raise issues already decided or waived on direct appeal. *Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir. 1995).  A petitioner cannot raise

constitutional issues that he could have, but did not directly appeal, unless he shows good cause for, and actual prejudice from, his failure to raise them on appeal, or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Bousley v. United States,* 523 U.S. 614, 622 (1998); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000). Likewise, a Section 2255 motion cannot pursue non-constitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States,* 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the Section 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

Perrone also raises an ineffective assistance of counsel claim related to his counsel's faiure to advise him on the *Hatfield* decision. A petitioner bears a heavy burden to establish ineffective assistance of counsel. *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). These claims are evaluated under the two-prong *Strickland* test. See *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007)(citing *Strickland v. Washington*, 466 U.S. 688, 690, 694 (1984)). In order to succeed on an ineffective assistance of counsel claim under *Strickland*, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the petitioner in such a way that, but for counsel's

errors, the result of the proceedings would have been different. *Strickland,* 466 U.S. at 695 (1984). The Court is not required to analyze both the performance and prejudice prong, because the failure to satisfy either prong is fatal to the claim. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993); *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990).

To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). To satisfy the second prong, a petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, the outcome of the proceeding would have been different. *McElvaney v. Pollard,* 735 F.3d 528, 533 (7th Cir. 2013).

A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). Thus, a petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006). In order to establish that counsel's performance was deficient, the defendant must show errors so serious that "counsel was not functioning as the 'counsel' guaranteed

to the defendant by the Sixth Amendment." *Atkins v. Zenk*, 667 F.3d 939, 944 (7th Cir. 2012).

## IV. Argument

a. **Claim of Innocence under *Burrage***

In January 2014, the Supreme Court issued its Opinion in *Burrage v. United States*, 134 S.Ct. 881 (2014) imposing a new and stricter burden of proof that the government must meet in order to establish that "death resulted" from drug distribution. The Supreme Court held: "[a]t least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but for cause of the death or injury." *Id*. at 892. It emphasized that when a statute does not define the phrase "result from," the court should give it its ordinary meaning, which is actual or but-for causation. *Id.* Therefore, under *Burrage*, the government must meet a "but for" causation test, meaning that "but for" the drug which a defendant distributed, the overdose victim would not have died. *Id*. at 888–892. It is no longer sufficient for the government to merely prove that the drug distributed by a defendant "contributed" to an overdose victim's death, i.e., as part of a fatal mixed-drug cocktail. *Id*.

However, as the government points out in its response, the day before Perrone was to be sentenced, the Seventh Circuit issued the *U.S. v. Hatfield*, 591 F.3d 945 (7th Cir. Jan. 14, 2010) opinion. The Seventh Circuit held in

*Hatfield* that in order for a defendant to receive the "death resulting" enhancement, the government must prove, under the "but for" causation test, that ingestion of the drugs distributed by the defendant actually caused an overdose victim's death. *Hatfield*, 591 F.3d at 949–51. Therefore, *Hatfield* imposes the same burden of proof on the government that *Burrage* now requires. It is also worth highlighting that Perrone had already admitted to the elements of the crime pursuant to his plea agreement prior to *Hatfield.*

Despite the substantive change in the law in *Burrage*, the government argues that there is still sufficient evidence to support Perrone's guilty plea and sentencing. Perrone argues that *Burrage* makes him innocent of the charges contained in the indictment. Though the government concedes that *Burrage* is substantive in nature and is retroactive, the government argues that *Burrage* does not help Perrone, because at the time of his sentencing, the Seventh Circuit's decision in *Hatfield v. United States* was the controlling law and utilized the same "but for" causation test that *Burrage* now requires. The Court agrees with the government on this sentiment.

The government also notes that any ineffective assistance of counsel claim based on the failure to object under *Hatfield* at the time of Perrone's sentencing is arbitrary, given the change of plea and stipulated facts in his criminal case. Thus, Perrone cannot show cause and prejudice for his failure to address the "but for" causation test, as set forth in *Hatfield* and *Burrage* at his sentencing. The Court agrees with the government on this point as well.

The Court first turns to Perrone's knowing and voluntary plea entered prior to *Hatfield*. In conjunction with Perrone's change of plea, he signed a stipulation of facts admitting the following:

> "1. In April 2008, Perrone injected Terry Learn with a syringe containing cocaine.
> 2. Terry Learn died immediately after receiving the injection.
> 3. Defendant and another person moved Terry Learn's body to her own apartment, and left it there next to a syringe, in order to create the false impression that Terry Learn had died alone in her own residence."

(Cr. Doc. 47). The plea agreement and stipulation facts constitute the entire agreement between Perrone and the government (Cr. Doc. 46, pg. 3). In the plea agreement itself, the government and Perrone agreed that he would plead guilty to "Distribution of a Controlled Substance Resulting in Death" in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) because the "ingestion of the controlled substance distributed [Perrone] caused the death of [Terry Learn] (*Id.* at pg. 5).

At the plea hearing, Perrone affirmed that he had an adequate opportunity to read and discuss the plea agreement with counsel (Cr. Doc. 73, pg. 13), that he understood the plea agreement and charges against him (*Id.* at 11-13), and that no one had forced him or made any promises, oral or written, to cause him to plead guilty. (Cr. Doc. 73, pg. 21 & 27). With regard to his attorney, the Court asked and Perrone further affirmed he was satisfied with the counsel, representation, and advice given by his attorney:

> **THE COURT**: But in terms of his making an effort on your behalf, you feel like he's made the appropriate effort on your behalf?

> **THE DEFENDANT**: Yes, in my best interest.
> **THE COURT**: That's what I'm interested in.
> Now, Mr. Perrone, there was filed today a document called plea agreement in this case. It's a document that is 13 pages in length, and on the very last page there's one sentence that says no matters are in dispute, and then there are some signatures. Yours is a unique signature, would you agree with that?
> **THE DEFENDANT**: Yes, sir.
> …
> **THE COURT**: Okay. Now, Mr. Perrone, before you signed this, whether it was today or some other day, at some point in time did you actually read this plea agreement yourself?
> **THE DEFENDANT**: Went over it with my lawyer, yes.
> **THE COURT**: Now, that could mean a lot of things. What does "went over with my lawyer" mean to you?
> **THE DEFENDANT**: We sat down and went line-by-line.
> **THE COURT**: Okay. That's pretty thorough. Now, so you sat down, and did your lawyer and you read through it line-by-line?
> **THE DEFENDANT**: Yes, sir, we did.

(*Id.* at 12-14). The Court also probed further into Perrone's decision to plead guilty and the basis for such decision.

> **THE COURT**: Okay. So you have worked very hard, gone through some process to come to the position where you are today when you made a decision that you're going to come in and plead guilty?
> **THE DEFENDANT**: Yes, sir.
> **THE COURT**: Now, Mr. Perrone, this is a strange way to word this, but given the fact of life that you have to deal with this case, are you comfortable that you've done everything you can to make the decision to plead guilty today?
> **THE DEFENDANT**: Yes, I am.
> **THE COURT**: And you have no hesitation that you're doing the right thing for you?
> **THE DEFENDANT**: That's correct, Your Honor.
> **THE COURT**: And you have no doubts; that no matter how much time we spend, you would always make the decision to plead guilty in this case?
> **THE DEFENDANT**: Yes, sir.

(*Id.* at 26-27). Perrone also affirmed his understanding that he was waiving his right to appeal or collaterally attack his plea and sentence. (*Id.* at 34-33).

Moreover, the written factual stipulation filed with the plea agreement, page five of the plea agreement itself, and the verbal factual basis presented during the plea colloquy stated that Perrone knowingly distributed a controlled substance; that the ingestion of the controlled substance distributed by Perrone caused the death of another person; and finally, the defendant agrees and admits that his conduct violated these essential elements of the offense (Cr. Doc. 73, pg. 35; Cr. Doc. 46, pg. 5; Cr. Doc. 47). The Court also went over the stipulation of facts with Perrone at the plea hearing.

> **THE COURT**: Okay. As he was reading these facts to you, Mr. Perrone, did you make absolutely and totally certain that these facts were true as he read them?
> **THE DEFENDANT**: Yes, sir, I did.
> **THE COURT**: Okay. And once again, is that your signature, sir?
> **THE DEFENDANT**: Yes, Your Honor, it is.
> **THE COURT**: And you signed it after he read it to you?
> **THE DEFENDANT**: That is correct.

(Cr. Doc. 73, pg. 37).

In this respect, the allegations are different from those found insufficient in *Burrage*, where the defendant went to trial and the government alleged only that his actions contributed to the death of the individual. In this case, Perrone specifically conceded that Terry Learn's ingestion of the cocaine, which he provided her, caused her death. During his guilty plea hearing excerpted above, Perrone acknowledged, under oath, that he stipulated to and agreed with that

factual basis in the plea agreement. (*Id.*) Perrone also stated during his plea hearing that he understood that, should he decide not to plead guilty, the United States would have to prove that death resulted from the distribution of this cocaine.

So, in pleading guilty, Perrone acknowledged the fact that the cocaine he disturbed to Learn, and helped her to inject, caused her death. Thus, unlike the defendant in *Burrage*, Perrone admitted in the guilty plea colloquy that Learn's death resulted from the cocaine that he provided to her, and Perrone is bound by his representations. He did not agree to a factual basis which provided that cocaine was <u>a</u> cause of death; rather, he agreed to a factual basis that cocaine was <u>the</u> cause of death (Cr. Doc. 46, pg. 5). Therefore, Perrone's first ground for relief is denied.

### b. Ineffective Assistance of Counsel Claim

In reviewing the circumstances of this case, the Court finds that evidence still supports Perrone's guilty plea under *Burrage's* "but for" causation test. As noted *supra*, in his plea agreement, Perrone stipulated to the essential elements of the case that Perrone "knowingly distributed a controlled substance; and that the ingestion of the controlled substance distributed by the defendant caused the death of another person (*Id.*). Perrone also admitted that he injected Terry Learn with a syringe containing cocaine and Learn died immediately after receiving the injection. (Cr. Doc. 47) To reiterate the points above, Perrone stated that he went over the stipulation of facts and plea agreement with his

attorney and agreed with the facts without objection. Accordingly, at the time of sentencing, an objection regarding the *Hatfield* "but for" causation requirement would have been futile based on the stipulated facts in the plea agreement.

Based on Perrone's acceptance of responsibility and in light of the facts and elements of the crime admitted in the plea agreement, the failure to advise him on the *Hatfield* decision is not indicative of ineffective assistance of counsel, and his attorney's decision does not fall below the objective standard of reasonableness See *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir.1996); *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir.2004)("counsel is not required to raise every non-frivolous issue on appeal). Perrone's plea documents and his statements made during the plea hearing contradict Perrone arguments now. It is clear to the Court that Perrone was informed of the nature of the proceedings and was aware of the charges to which he was pleading guilty. During his plea hearing, Perrone testified under oath that:(1) He and his attorney went over the stipulation of facts and plea agreement multiple times and he had no objection to the documents; (2) He had ample opportunity to discuss his change of plea and the facts with his attorney over a period of months; (3) He was satisfied with Mr. Williams' representation; (4) Williams made the appropriate effort on his behalf and in his best interest and(4) He was satisfied with Williams' representation in this case.

Later, at the sentencing, Perrone echoed those same sentiments about his new counsel Frederick J. Hess, with no mention of *Hatfield*:

> **THE COURT:** Now, Mr. Hess has filed a number of objections to the report. Are you aware of the objections he's filed?
> **THE DEFENDANT:** Few of them, Your Honor.
> **THE COURT**: To the extent that you're aware of them, do you believe that [your attorney] has covered the objections that you had to the report, sir?
> **THE DEFENDANT**: I believe so.

(Cr. Doc. 74, pg. 3-4). Perrone had the opportunity to address *Hatfield* and his displeasure with his attorney for failing to address the case during his proffer. He chose not to do so.

Moreover, based on the guilty plea and the facts and elements included in the plea agreement, any objection under *Hatfield* would have been futile. Perrone voluntarily signed a plea agreement where he admitted the facts of the case and the elements that established the "but for" causation of Learn's death. As exhibited above, this plea was clearly knowing and voluntary. Perrone admitted that the cocaine he provided Learn caused her death. He also admitted that Learn's death occurred directly after the injection was administered.[3] Therefore, given the strong presumption that Perrone's attorneys rendered adequate representation in this case, and on the basis of the

---

[3] In Perrone's PSR and during sentencing Perrone mentioned that he and the victim did in fact make a suicide pact, which further bolsters the argument that the cocaine was the "but for" cause of Ms. Learn's death. The PSR also reported that after Perrone was arrested by the St. Clair County Sheriff's Department in November 2008, Perrone voluntarily confessed to killing Learn. He stated that Learn injected herself once, but Perrone advised her that the amount injected was not enough to kill her. Then Perrone prepared a second cocaine injection for her. When Learn was unable to inject the second syringe, Perrone, himself, injected the mixture for her. Moments later Learn began to experience convulsions and fell to the floor. When police asked why Perrone injected Learn with cocaine, he brought up the suicide pact, and described that Learn could not inject it herself. He then disclosed that he was supposed to commit suicide with her, but he could not kill himself. (Cr. Doc. 55, pg. 4-5).

above, Perrone's second ground for relief, is denied and his motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Doc. 1) is denied.

## V. <u>Certificate of Appealability Denied</u>

Under the 2009 Amendments to Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether petitioner's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability has been granted. See *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009).

For a court to issue a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right," meaning, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)); 28 U.S.C. § 2253(c)(2).

As to petitioner's claims, the Court finds that reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right, as petitioner's claim of ineffective assistance of counsel and a change in law do not present evidence of constitutionally deficient attorney

performance; nor do they demonstrate resulting prejudice. Further, the Court finds that reasonable jurists could not differ on these conclusions. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

## VI.  Conclusion

For the reasons as discussed herein, Perrone's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence is **DENIED** (Doc. 1) and Perrone's claims are **DISMISSED with prejudice**. Also, Perrone's motion for hearing is **DENIED** (Doc. 50). The Court **ORDERS** the Clerk of the Court to enter judgment accordingly. Further, the Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 19th day of May, 2016.

Digitally signed by
Judge David R. Herndon
Date: 2016.05.19
15:15:51 -05'00'

**United States District Judge**